Thomas P. RECAR, Plaintiff–Appellant,

v.

CNG PRODUCING COMPANY, Defendant–Appellee.

No. 87–3711

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Aug. 29, 1988.

Joseph J. Weigand, Jr., Weigand, Weigand & Meyer, Houma, La., for plaintiff-appellant.

Mark J. Spansel, Deborah B. Rouen, Adams & Reese, New Orleans, La., for defendant-appellee.

Before CLARK, Chief Judge, WILLIAMS and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

The district court determined that it had no subject matter jurisdiction over Thomas P. Recar's action to recover damages for injuries he sustained on the Outer Continental Shelf in the Gulf of Mexico and dismissed his suit. We conclude that the Outer Continental Shelf Lands Act vests the court with jurisdiction over this action. Accordingly we reverse and remand.

### I.

The appellant, Thomas P. Recar, was employed by Land & Offshore Company as a maintenance crew foreman. Recar and his crew had been engaged for some time in repairing and painting platforms that CNG Producing Company (CNG) owned on the Outer Continental Shelf off the coast of Louisiana in the Gulf of Mexico. CNG had hired the M/V GRADY FAGAN to transport the crew from platform to platform, and Recar and his crew ate and slept aboard this vessel. Additionally, Recar spent a large part of his work time aboard the GRADY FAGAN, monitoring the crew's work. On the morning of November 28, 1985, Recar alleges that he was swinging from a CNG platform to the GRADY FAGAN when the rope broke, causing Recar to fall to the deck of the GRADY FAGAN and injure his neck. Recar filed suit against CNG claiming jurisdiction under the Outer Continental Shelf Lands Act (OCSLA). At a pretrial conference, the district court determined that its only basis for subject matter jurisdiction was in admiralty. Recar was given the opportunity to amend his complaint to assert admiralty jurisdiction, but he declined to do so. The district court then dismissed the action without prejudice, and Recar appealed from that order.

### II.

Recar contends that the district court should have accepted jurisdiction of his action under the OCSLA, which provides:

[T]he district courts of the United States shall have jurisdiction of cases and controversies arising out of, or in connection with (A) any operation conducted on the Outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil of the seabed of the Outer Continental Shelf, or which involves rights to such minerals....

43 U.S.C. § 1349(b)(1).

Recar's argument requires us to consider two questions: (1) does the OCSLA give federal district courts subject matter jurisdiction to adjudicate actions arising under the Act, and (2) does the OCSLA apply to Recar's action.

■ This court answered the first question in *Laredo Offshore Constructors, Inc. v. Hunt Oil Co.*, 754 F.2d 1223 (5th Cir. 1985). In that case, Laredo sued Hunt to recover the contract price for constructing a stationary platform twenty-five miles off the Louisiana coast in the Gulf of Mexico. Hunt defended on grounds that the work was improperly performed. Laredo sought to invoke the admiralty jurisdiction of the court. The district court concluded that it had no admiralty jurisdiction and dismissed the action. On appeal, we agreed that the court had no admiralty jurisdiction but concluded that "because the OCSLA vests district courts with original jurisdiction over cases and controversies arising out of any operation conducted on the Outer Continental Shelf involving the exploration, development, or production of natural resources, we find that the district court is empowered to hear the case." *Id.* at 1233.

■ We also agree with Recar that he has alleged facts that bring his case within the provisions of OCSLA. As indicated above, Recar, at the time of his injury was working as the foreman of a maintenance crew engaged in painting and repairing production platforms which were built and maintained for the purpose of producing oil and gas from wells previously drilled. The reach of OCSLA is broad and includes cases "arising out of or in connection with any operation conducted on the Outer Continental Shelf which involves ... production of the minerals...." 43 U.S.C.

§ 1349(b)(1). Section 1331(m) provides further that "the term 'production' means those activities which take place after the successful completion of any means of the removal of mineral including ... maintenance...." Thus, the question narrows to whether Recar's injury, that occurred while he was overseeing the repair and maintenance of the platform, arises out of the production of minerals on the Outer Continental Shelf.

We have established a "but for" test to resolve this question. In *Barger v. Petroleum Helicopters, Inc.*, 692 F.2d 337, 340 (5th Cir.1982), we considered whether a helicopter pilot killed on the Outer Continental Shelf while ferrying employees to production platforms was covered by the OCSLA. In answering this question in the affirmative we stated:

> Barger likewise would not have been killed in a helicopter crash in the Gulf of Mexico "but for" the fact that he was employed to transport eleven workers to a fixed platform on the Shelf. His work furthered mineral exploration and development activities and was in the regular course of activities.

*Id.* at 340; *see also Herb's Welding v. Gray*, 766 F.2d 898, 900 (5th Cir.1985) (on remand).

In this case Recar's work maintaining the production platform furthered mineral development. Recar would not have been injured "but for" the maintenance work he was performing and supervising on the platform. Recar's activities fall within the scope of OCSLA.

CNG argues that OCSLA does not provide the district court with subject matter jurisdiction because of the maritime flavor of this case. CNG points out that Recar spent most of his time actually working from the M/V GRADY FAGAN, and that his injuries were sustained when he landed on the deck of that vessel while trying to board her. CNG's argument misses the point. The district court may well have both admiralty jurisdiction under the general maritime law and federal question jurisdiction by virtue of OCSLA. As we stated in *Laredo*, "where admiralty and OCSLA jurisdiction overlap, the case is governed by maritime law." 754 F.2d at 1229.

The district court may well conclude that the relationship of the alleged "wrong" in this case to traditional maritime activity is sufficiently strong to characterize the wrong as a maritime tort which requires application of general maritime law. *See Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 253–60, 93 S.Ct. 493, 497–500, 34 L.Ed.2d 454 (1972); *Smith v. Pan Air Corp.,* 684 F.2d 1102 (5th Cir. 1982). But we are not called upon at this time to decide which body of law applies to this case. The district court will make this determination based upon principles articulated in a number of cases that have considered this question including *Rodrigue v. Aetna Casualty & Sur. Co.,* 395 U.S. 352, 355, 89 S.Ct. 1835, 1836, 23 L.Ed.2d 360 (1969), *Smith,* 684 F.2d at 1109–10, and *Laredo,* 754 F.2d at 1229. The sole question presented to us in this appeal is whether OCSLA invests the district court with original federal question jurisdiction. For the reasons stated above we answer this question in the affirmative.

Accordingly, the judgment of the district court is reversed and the case is remanded for further proceedings.

REVERSED and REMANDED.