United States Court of Appeals,

Fifth Circuit.

No. 95-30739.

TENNESSEE GAS PIPELINE, also known as Tenneco Incorporated, Plaintiff-Appellant,

v.

HOUSTON CASUALTY INSURANCE COMPANY, Defendant-Appellee.

July 8, 1996.

Appeal from the United States District Court for the Western District of Louisiana.

Before REAVLEY, GARWOOD and JOLLY, Circuit Judges.

REAVLEY, Circuit Judge:

An ocean-going vessel, in the tow of a tug whose helmsman was reading a novel, allided with a platform secured to the outer continental shelf some 35 miles off the coast of Louisiana. The platform owner filed suit in state court against a non-diverse insurer of the tug, contending both that the allision gave rise to a federal maritime claim that was "saved to suitors" under 28 U.S.C. § 1333, and that the Louisiana direct action statute gave it the right to proceed against the insurer directly. The insurer removed the case, asserting that the federal courts had federal question jurisdiction because the suit arose under the Outer Continental Shelf Lands Act (OCSLA).[1] The platform owners moved for remand. The district court denied remand, but, finding it a close case, certified the question for interlocutory appeal.[2] We permitted appeal, and we now affirm.

Tennessee Gas Pipeline Company (Tennessee Gas or appellant), a citizen of Texas, owned and operated a fixed platform in West Cameron Block 192, on the outer continental shelf approximately 35 miles off the coast of Louisiana. On September 23, 1992, the barge Iron Mike, in the tow of the tug M/V Gulf Miss, allided with the platform, substantially damaging it and disrupting its operation for a considerable length of time. Houston Casualty Company (HCC or appellee), also a citizen of Texas, is an insurer of the several entities which owned, operated, or chartered the M/V

---

[1]43 U.S.C. § 1331, et seq.

[2]*See* 28 U.S.C. § 1292(b).

Gulf Miss (collectively Tidewater).

Following the allision, Tennessee Gas sued HCC in the state direct action suit at issue in this appeal. Tennessee Gas admits forthrightly that it attempted to craft its lawsuit to avoid federal removal jurisdiction. First, in order to defeat diversity jurisdiction, and as allowed under Louisiana law, Tennessee Gas sued only HCC, even though HCC underwrote only 4% of the risk covered under Tidewater's insurance policy. And second, Tennessee Gas tried to defeat federal question jurisdiction by asserting only a general maritime claim saved to suitors under 28 U.S.C. § 1333,[3] purposely choosing not to assert a claim under OCSLA.

But even assuming that Tennessee Gas has defeated diversity jurisdiction and that its well-pleaded complaint asserts a maritime claim that is saved to suitors, we nevertheless have removal jurisdiction.

A. Anchored Law

HCC, the removing party, bears the burden of demonstrating the propriety of removal[4] under the statute, 28 U.S.C. § 1441, which reads:

> (a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending....

> (b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States, shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

It is well-established that maritime claims do not "aris[e] under the Constitution, treaties or laws of the United States" for purposes of federal question and removal jurisdiction.[5] Tennessee

---

[3]28 U.S.C. § 1333 states:

> The district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled....

[4]*Gaitor v. Peninsular & Occidental Steamship Co.,* 287 F.2d 252, 253-54 (5th Cir.1961).

[5]*Romero v. International Terminal Operating Co.,* 358 U.S. 354, 377-79, 79 S.Ct. 468, 483, 3 L.Ed.2d 368 (1959) (holding, inter alia, that federal courts do not have federal question

Gas's maritime claim is not removable under the first sentence of 28 U.S.C. § 1441(b) by falling within the admiralty jurisdiction of the federal courts. But it is also well-established that the saving clause do es not prevent the removal of maritime claims when original jurisdiction is based on something other than admiralty.[6] As we have stated:

> The "saving to suitors" clause does no more than preserve the right of maritime suitors to pursue nonmaritime *remedies.* It does not guarantee them a nonfederal *forum,* or limit the right of defendants to remove such actions to federal court where there exists some basis for federal jurisdiction other than admiralty.[7]

In this case OCSLA provides an alternative basis for original jurisdiction.

B. OCSLA Original Jurisdiction

OCSLA declares that "the subsoil and seabed of the outer Continental Shelf appertain to the United States and are subject to its jurisdiction, control, and power of disposition...."[8] OCSLA also declares that "the outer Continental Shelf is a vital national resource reserve held by the Federal Government for the public...."[9] In order to provide expeditious but environmentally safe development of the resources on the OCS, OCSLA explicitly prevents individual states from authorizing mineral leases covering the OCS.[10] Thus OCSLA is an assertion of national authority over the OCS at the expense of both foreign governments and the governments of the individual states.

One purpose of OCSLA was to define the law applicable to the seabed, subsoil, and fixed

---

jurisdiction over general maritime claims because such claims do not "arise under the Constitution, treaties, or laws of the United States" within the meaning of 28 U.S.C. § 1331); *In re Dutile,* 935 F.2d 61, 63 (5th Cir.1991) (holding that saving clause claims cannot be removed under 28 U.S.C. § 1441(b) on the sole basis that the maritime claim presents a federal question).

[6]*See, e.g., Poirrier v. Nicklos Drilling Co.,* 648 F.2d 1063, 1066 (5th Cir.1981) (permitting removal of a maritime claim where diversity jurisdiction exists); *Williams v. M/V Sonora,* 985 F.2d 808 (5th Cir.1993) (permitting removal of a maritime claim where jurisdiction is proper under the Federal Sovereign Immunities Act).

[7]*Poirrier,* 648 F.2d at 1066.

[8]43 U.S.C. § 1332(1).

[9]43 U.S.C. § 1332(3).

[10]43 U.S.C. § 1333(a)(1) (providing that mineral leases on the outer continental shelf shall be maintained or issued only under the provisions of OCSLA).

structures on the OCS.[11]  Section 4 of OCSLA[12] makes federal law exclusive in its regulation of the OCS, but in order to fill the substantial gaps in the coverage of federal law, OCSLA adopts the "applicable and not inconsistent" laws of the adjacent states as surrogate federal law.[13]  State law was adopted as federal law because Congress knew that federal law, including maritime law, was inadequate to meet the full range of disputes that would arise on the OCS.[14]

While OCSLA was intended to apply to the full range of disputes that might occur on the OCS, it was not intended to displace general maritime law.  This is clear from both the statute itself and holdings of this court.  According to the statute, "this subchapter shall be construed in such a manner that the character of the waters above the outer Continental Shelf as high seas and the right to navigation and fishing therein shall not be affected."[15]  Furthermore, 43 U.S.C. § 1333(f) makes clear that the applicability of OCSLA law under 43 U.S.C. § 1333(a) shall not give rise to any inference that other provisions of law (such as general maritime law), do not also apply.[16]  It is not surprising, therefore, that this court has declared that where OCSLA and general maritime law both could apply, the case is to be governed by maritime law.[17]

---

[11]*Rodrigue v. Aetna Cas. And Sur. Co.,* 395 U.S. 352, 355-56, 89 S.Ct. 1835, 1837, 23 L.Ed.2d 360 (1969).

[12]43 U.S.C. § 1333.

[13]*Gulf Offshore Co. v. Mobil Oil Corp.,* 453 U.S. 473, 479-81, 101 S.Ct. 2870, 2876, 69 L.Ed.2d 784 (1981);  43 U.S.C. § 1333(a)(2).

[14]*Rodrigue,* 395 U.S. at 357-58, 360-66, 89 S.Ct. at 1838, 1840-42.

[15]43 U.S.C. § 1332(2).

[16]43 U.S.C. § 1333(f) is entitled "Provisions as nonexclusive," and states:

> The specific application by this section of certain provisions of law to the subsoil and seabed of the outer Continental Shelf and the artificial islands, installations, and other devices referred to in subsection (a) of this section or to acts or offenses occurring on committed thereon shall not give rise to any inference that the application to such islands and structures, acts, or offenses of any other provision of law is not intended.

[17]*See, e.g., Smith v. Penrod Drilling Corp.,* 960 F.2d 456, 459 (5th Cir.1992) (for OCSLA to apply, federal maritime law must not apply of its own force);  *Laredo Offshore Constructors, Inc. v. Hunt Oil Co.,* 754 F.2d 1223, 1229 (5th Cir.1985) ("[W]here admiralty and OCSLA jurisdiction overlap, the case is governed by maritime law.");  *Smith v. Pan Air Corp.,* 684 F.2d

OCSLA not only defines the law applicable to the OCS, but also grants federal courts jurisdiction over disputes occurring there. The jurisdictional grant, contained in 43 U.S.C. § 1349(b)(1), is very broad. With exceptions not relevant here, the statute provides that

> the district courts of the United States shall have jurisdiction of cases and controversies *arising out of, or in connection with* (A) any *operation* conducted on the outer Continental Shelf which involves *exploration, development, or production* of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals, or (B) the cancellation, suspension, or termination of a lease or permit under this subchapter.

We have no difficulty in deciding that § 1349 grants original jurisdiction in federal court over Tennessee Gas's claim. The statute does not define the term "operation." However, this court has defined "operation" to be "the doing of some physical act."[18] In our case, Tennessee Gas alleged that its platform was affixed to the OCS and was used to extract and transport minerals from the OCS. This was clearly enough physical activity on the OCS to constitute an operation. In *EP Operating Ltd. Partnership v. Placid Oil Co.,*[19] this court considered whether it had jurisdiction under § 1349 over a partition action brought to determine ownership of an offshore platform not then being used. The defendants argued that there was no operation because use of the platform had ceased. We disagreed, noting that construction of the platform and pipes to transport minerals was sufficient physical activity to constitute an operation under § 1349.[20]

It is clear that the operation involves "exploration, development, or production" of minerals on the OCS. These terms denote respectively the processes involved in searching for minerals on the OCS;[21] preparing to extract them by, inter alia, drilling wells and constructing platforms;[22] and

---

1102, 1110 n. 26 (5th Cir.1982) (assuming that admiralty jurisdiction is lacking if the substantive law applicable is OCSLA-imposed state law).

[18]*Amoco Production Co. v. Sea Robin Pipeline Co.,* 844 F.2d 1202, 1207 (5th Cir.1988).

[19]26 F.3d 563 (5th Cir.1994).

[20]*Id.* at 567-68.

[21]43 U.S.C. § 1331(k).

[22]43 U.S.C. § 1331(*l*).

removing the minerals and transferring them to shore.[23] Tennessee Gas's platform was constructed to aid in the "development" of minerals on the OCS, and Tennessee Gas's allegations that the accident caused losses due to the inability to extract minerals implicates the "production" of minerals on the OCS.

But did the accident "arise out of, or in connection with" Tennessee Gas's operation on the OCS? In *Recar v. CNG Producing Co.,* we applied a "but for" test under § 1349 to resolve whether a dispute "arises out of, or in connection with" an operation, thus granting the federal courts subject matter jurisdiction.[24] Use of the but-for test implies a broad jurisdictional grant under § 1349, but we have concluded that " "a broad, not a narrow, reading of this grant is supported by the clear exertion of federal sovereignty' " over the OCS.[25]

In our case it is clear there would have been no accident but for Tennessee Gas's operation on the OCS. Tennessee Gas argues that the dispute "arose out of" a navigational error, and not an operation on the OCS. But there would have been no navigational error but for the existence of the platform and Tennessee Gas's extractive activities. Tennessee Gas also argues that the platform itself did nothing to cause the accident, so that the controversy is not connected with any physical act constituting an operation. This contention is meritless. The undeniable fact is that there would not have been an accident had Tennessee Gas not built its platform to extract minerals from the OCS. Jurisdiction therefore exists under OCSLA.

Our conclusion that OCSLA confers original jurisdiction over this suit is unaffected by the maritime nature of the underlying claim. In *Recar* we considered whether OCSLA conferred subject matter jurisdiction over the plaintiff's action to recover damages for injuries sustained on the OCS. The plaintiff argued that OCSLA did not confer jurisdiction because of the maritime nature of the

---

[23]43 U.S.C. § 1331(m).

[24]853 F.2d 367, 369 (5th Cir.1988) (adopting under § 1349 the but-for test this court has applied under § 1333(b)(2) to determine whether the death of an employee occurred "as the result of operations conducted on the outer Continental Shelf for the purpose of exploring for, developing, removing or transporting" the natural resources of the OCS).

[25]*EP Operating,* 26 F.3d at 569 (quoting *Fluor Ocean Serv's, Inc. v. Rucker Co.,* 341 F.Supp. 757, 760 (E.D.La.1972).

case. We held that the district court may have both admiralty and OCSLA jurisdiction.[26]

C. Removal of Maritime Claims Under OCSLA

Our conclusion that OCSLA vests the federal courts with original subject matter jurisdiction over this case establishes that removal is proper under 28 U.S.C. § 1441(a). We go to § 1441(b) and encounter a problem in deciding whether we have removal jurisdiction under the first sentence.

The question under the first sentence of § 1441(b) is whether the district court has "original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States."[27] There is an argument it does not. We have decided original jurisdiction because of OCSLA, but does Tennessee Gas's claim "arise under the Constitution, treaties or laws of the United States?" A maritime claim does not present federal question jurisdiction.

Two of our cases may be read to support removal of general maritime claims under the first sentence of § 1441(b) when original jurisdiction is conferred by OCSLA. The first is *Sea Robin.* In that case, Amoco filed suit against Sea Robin in Louisiana state court, alleging that Sea Robin breached a take-or-pay contract to buy natural gas Amoco produced on the OCS. Sea Robin removed, and we held that removal was proper because "this controversy is within federal jurisdiction under OCSLA."[28] The opinion contains almost no discussion of § 1441(b) and does not mention the citizenship of the parties.

The second case is *Recar,* which concerned the court's original, not removal, jurisdiction. In that case, we held that we had original jurisdiction under OCSLA (43 U.S.C. § 1349) over a personal injury claim, even if maritime law eventually provided the substantive law in the case.[29] In the opinion we stated that "[t]he district court may well have both admiralty jurisdiction under the general maritime law and *federal question jurisdiction* by virtue of OCSLA."[30] However, nowhere in the

[26]*Recar,* 853 F.2d at 369.

[27]28 U.S.C. § 1441(b).

[28]*Sea Robin,* 844 F.2d at 1210.

[29]*Recar,* 853 F.2d at 369.

[30]*Id.* (emphasis added).

opinion does the court address 28 U.S.C. § 1331, and we do not believe the court meant to say that federal question jurisdiction exists by virtue of jurisdiction under 43 U.S.C. § 1349.

Two district court cases are on point. In *Walsh v. Seagull Energy Corp.,*[31] and *Fogleman v. Tidewater Barges, Inc.,*[32] the courts considered removal of general maritime claims when OCSLA provided original jurisdiction. In each case, the court concluded that removal could not be based on the first sentence of § 1441(b) (because maritime claims do not arise under federal law),[33] and denied removal under the second sentence of § 1441(b) because the defendant was a citizen of the state in which suit was brought.[34]

In our case, unlike in *Walsh* and *Fogleman,* removal is consistent with the second sentence of § 1441(b)—HCC is a citizen of the state of Texas, but suit was brought in Louisiana. We recognize that it may be a distortion of the legal scheme to decide this case on the citizenship of HCC. Given the national interests that prompted Congress to pass OCSLA and grant broad jurisdiction under 43 U.S.C. § 1349, Congress arguably intended to vest the federal courts with the power to hear any case involving the OCS, even on removal, without regard to citizenship.

Perhaps Congressional intent under OCSLA may have supported removal under the first sentence of § 1441(b), though the language of that sentence might not carry the intent; while the language of the second sentence supports removal, though the purpose of the sentence (diversity) is arguably irrelevant to our case. We need not resolve this conundrum, however, for removal is consistent with the second sentence of § 1441(b), if not the first.

For the foregoing reasons, we AFFIRM the judgment of the district court denying remand to state court, and remand the case to the district court for further proceedings.

AFFIRMED.

E. GRADY JOLLY, Circuit Judge, specially concurring:

---

[31]836 F.Supp. 411 (S.D.Tex.1993).

[32]747 F.Supp. 348 (E.D.La.1990).

[33]*See Walsh,* 836 F.Supp. at 417-18; *Fogleman,* 747 F.Supp. at 355-56.

[34]*See Walsh,* 836 F.Supp. at 417; *Fogleman,* 747 F.Supp. at 350, 356.

I concur, but in doing so I simply observe that the majority's discussion of the applicability of the first sentence of 28 U.S.C. § 1441(b) to claims over which we have original jurisdiction under 43 U.S.C. § 1349, Slip Op., at 4202-4203, is unnecessary to decide this case, and thus constitutes only dicta.