### John Nick SIMMS

v.

### ROCLAN ENERGY SERVICES, INC.

#### No. Civ.A. 00–2275.

United States District Court,
W.D. Louisiana,
Lafayette/Opelousas Division.

April 4, 2001.

Andre' F Toce, Michael G Daiy, Andre' F Toce & Assoc., Lafayette, LA, for John Nick Simms.

Frederick M Stoller, Ethan N Penn, McCloskey Langenstein & Stoller, New Orleans, LA, for Roclan Energy Services, Inc.

Laura Kay Austin Theunissen, Preis Kraft & Roy, Lafayette, LA, for Walter Oil & Gas Corp.

Michael Moreno, Lafayette, LA, for Moreno Energy Services Four LLC.

Susan A Daigle, Ginger A Hargett, Daigle Scofield & Rivera, Lafayette, LA, for M/V Mississippi LLC.

*MEMORANDUM RULING*

DOHERTY, District Judge.

Before the Court is a Motion to Remand filed on behalf of plaintiff, John Nick Simms, seeking a remand of this action to the 16th Judicial District Court, Parish of Iberia, Louisiana. Plaintiff originally filed suit in state court alleging claims for negligence in violation of LSA–C.C. art. 2315 and general maritime law on the part of the platform owner, Walter Oil & Gas Corp. ("Walter"); the vessel owner, M/V MISSISSIPPI, L.L.C.; the crane operator, Buck Fontenot; and the employer of the crane operator, Roclan Energy Services, Inc. ("Roclan"), and for unseaworthiness in violation of general maritime law against the vessel owner. The defendants removed the action to this Court pursuant to 28 U.S.C. § 1441. Plaintiff now seeks

to have the entire action remanded to state court. Plaintiff asserts the presence of maritime claims causes the removal of this entire case to be improper.

## Background

Plaintiff's allegations of the facts are as follows: Plaintiff was employed by Pneu Elect ("Pneu") as an electrical foreman to perform electrical installations and services for Walter on an offshore platform owned and operated by Walter. The platform was located approximately 50 miles off the Louisiana coast in the waters of the Gulf of Mexico. Defendant, Roclan, was a contractor for Walter doing welding, new equipment installations, finishing work, and construction on the offshore platform. Roclan employed the crane operator whose negligence plaintiff claims is the cause of his injuries.

On October 16, 1999, plaintiff was being lowered from the platform to a vessel, the *Sea Rambler*, by means of a personnel basket. The basket was attached to a crane located on the platform. Plaintiff was injured when the basket was lowered onto the vessel in choppy seas. No personnel were present on the deck of the vessel to assist with the transfer of personnel.

Plaintiff brings claims against defendants alleging negligence on the part of the platform owner, Walter; the vessel owner, M/V MISSISSIPPI, L.L.C.; the crane operator; and the employer of the crane operator, Roclan. Plaintiff also alleges unseaworthiness of the vessel. Plaintiff does not dispute jurisdiction over certain of his claims pursuant to the Outer Continental Shelf Lands Act ("OCSLA"), rather he contends the presence of certain claims couched under general maritime law cause the entire cause of action to be non-removable, and thus, he argues, the entire case must be remanded.

## Analysis

In order to determine whether remand of some or all of plaintiff's claims would be proper, the Court must look to 28 U.S.C. § 1441.[1] This statute requires examination of the *jurisdictional base* of each of plaintiff's claims for removal and addresses remand.

Section 1441(a) allows for removal of any action of which the district courts have original *jurisdiction*, i.e., any matter arising under the laws, Constitution or treaties of the United States, or any matter in which the requirements for federal diversity jurisdiction are met. Diversity does not exist in the case at bar. Therefore, the first step in the analysis is to determine whether on the face of the plaintiff's pleadings there exists a federal question. *Amo-*

---

1. 28 U.S.C. § 1441 provides:

 (a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.

 (b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States

 shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

 (c) Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates.

*co Prod. Co. v. Sea Robin Pipeline Co.*, 844 F.2d 1202, 1205 (5th Cir.1988).

According to the plaintiff's complaint, the accident which forms the basis of the suit allegedly occurred on or about October 16, 1999, on a platform "located approximately 50 miles off the Louisiana coast in the waters of the Gulf of Mexico." Complaint ¶ 3. The plaintiff was in the process of being transported from the Walter platform to the deck of the *Sea Rambler* vessel on a personnel basket which was being lowered by a crane affixed to the platform and operated by a Roclan employee, when, through the action of the crane operator, the absence of personnel on the vessel to assist in the transfer, and the rough seas, the violent movements of the basket injured plaintiff. Complaint at ¶ 9.

■ The Outer Continental Shelf Lands Act, 43 U.S.C. § 1331, et seq., provides "[t]he subsoil and seabed of the outer continental shelf appertain to the United States and are subject to its jurisdictional control and power of disposition...." 43 U.S.C. § 1332(a). Federal district courts have jurisdiction over claims "arising out of, or in connection with ... any operation conducted on the outer continental shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer continental shelf...." 43 U.S.C. § 1349(b)(1). OCSLA is a federal statute, federal district courts have federal question jurisdiction over claims which fall under OCSLA.

The plaintiff's petition does not plead OCSLA by name, but in his Memorandum in Support of Motion to Remand plaintiff acknowledges jurisdiction is present under OCSLA for certain of his claims, and no party disputes this fact.

■ Furthermore, when the facts of the case at bar are put through the Fifth Circuit's test to determine jurisdiction under OCSLA, it is clear jurisdiction exists under that statute for the claims against the platform owner, the crane operator, and the employer of the crane operator. "The test to determine whether OCSLA applies is did the accident 'arise out of, or in connection with' defendant's operation on the Outer Continental Shelf. The Fifth Circuit applies a 'but for' test." *Tennessee Gas Pipeline v. Houston Casualty Ins. Co.*, 87 F.3d 150, 155 (5th Cir.1996). A plaintiff's claims arise under OCSLA if 1) plaintiff's employment furthered mineral development on the Outer Continental Shelf, and 2) plaintiff's injury would not have occurred "but for" his employment. *Recar v. CNG Producing Co.*, 853 F.2d 367, 369 (5th Cir.1988).

■ Plaintiff, Simms, provided electrical services on an offshore platform on the Outer Continental Shelf owned by Walter, an oil and gas company, ostensibly involved in mineral development. Thus, the first prong of the test is met. As plaintiff was injured while in a personnel basket controlled by a crane on the platform, a basket he would not have been in "but for" his employment, the second prong is also met. In the instant case, it is clear that "but for" plaintiff's employment on the Walter platform on the Outer Continental Shelf, this accident would not have occurred.

Thus, a federal question is present on the face of plaintiff's well-pleaded complaint, and the removing parties have overcome the hurdle of 1441(a). The inquiry does not end there, however. The Court must next examine whether 1441(b) poses an obstacle *to the removal* of this case. Section 1441(b) states:

(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or resi-

dence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

Section 1441(b) provides matters arising under the Court's federal question jurisdiction may be removed without regard to the citizenship or residence of the parties. However, any other action, i.e., any action which does *not* arise under the Constitution, treaties, or laws of the United States (the most common example being a diversity action), is removable only if none of the defendants is a citizen of the forum state. In the case at bar, as examined above, there is a federal question present. Therefore, the first prong of 1441(b) is met. The Court need not examine the second prong as it applies only to cases which do not arise under the Constitution, treaties, or laws of the United States; the case at hand arises under OCSLA, a law of the United States. However, again, the inquiry does not end there.

The Court must determine whether the provisions of 1441(c) present an obstacle to *the removal* of any of the plaintiff's claims.

Section 1441(c) provides:

Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, *or, in its discretion, may remand all matters in which State law predominates.*

(emphasis added). This Court finds it helpful to parse out the rather slippery language of § 1441(c): If one has an original jurisdiction claim pursuant to 28 U.S.C. § 1331 (the federal question statute), the entire case is removable. However, if the claim which falls within this Court's jurisdiction is joined with a claim or cause of action (or claims or causes of action) which is otherwise non-removable, the entire case still may be removed to federal court, however, the Court may, in its discretion, remand "all matters *in which state law predominates,*" *if* the federal question claim is "**separate and independent**" from the otherwise non-removable claim.

■ Therefore, in order for the Court to exercise its discretion to remand to state court those claims in which state law predominates, the federal question claim must be separate and independent of the otherwise non-removable claim, and the claim for which the movant is seeking remand must be a matter in which state law predominates. If the appended claim meets those two criteria, it is within the Court's discretion to remand those claims only within which state law predominates to state court; the claims couched under federal question would remain in federal court.

A "separate and independent claim or cause of action" under 1441(c) has been defined in the jurisprudence more by what it is not, than by what it is. "[W]here there is a single wrong to plaintiff, for which relief is sought, arising from an interlocking series of transactions, there is no separate and independent claim or cause of action under 1441(c)." *American Fire and Casualty Co. v. Finn,* 341 U.S. 6, 14, 71 S.Ct. 534, 95 L.Ed. 702 (1951). While there may be different theories of recovery for that one wrong, it remains "a single wrongful invasion of a single primary right of the plaintiff." *Id.* at 13, 71 S.Ct. 534.

■ Thus, in the case at bar, while the plaintiff may have a claim under the general maritime law against the vessel—i.e., an otherwise non-removable claim, and claims against the platform defendants under OCSLA, he has suffered *only one in-*

*jury.* The fact that two or more actors may have been the cause of his injury does not create two or more separate and independent claims. Rather, the claims rely squarely on the same set of facts and are " 'little more than the equivalent of different epithets to characterize the same group of circumstances.' " *Id.* at 14, 71 S.Ct. 534 (quoting *Chase Securities Corp. v. Donaldson,* 325 U.S. 304, 311, 65 S.Ct. 1137, 1141, 89 L.Ed. 1628 (1945)). As such, the "otherwise non-removable claim" of plaintiff does not meet the criteria for "separate and independent" under 1441(c). Thus the 1331 claim is not "separate and independent" from the "otherwise non-removable" general maritime law claim.

The otherwise non-removable claim does not meet the second criteria for remand under 1441(c). The claim is based in the general maritime law, therefore it is decidedly not one in which state law predominates.

Consequently, this Court concludes the case was properly removed under 28 U.S.C. § 1441, and nothing within that statute allows for remand of any of plaintiff's claims.

However, plaintiff's argument is not limited to the assertion that certain of his claims are governed by OSCLA and certain by general maritime law, and thus the "otherwise non-removable" claim should be remanded. Instead, he argues his claims are not separate and independent, rather they are of the sort over which OCSLA and general maritime law "overlap", and thus, per *Hufnagel v. Omega Service Industries, Inc.,* 182 F.3d 340, 349 (5th Cir. 1999), the entire case is not subject to removal. Plaintiff argues when OCSLA and maritime law "overlap," maritime law trumps OCSLA, and the entire case should be seen as arising under general maritime law thus rendering the entire matter non-removable as claims brought pursuant to the general maritime law are not remova-

ble. For this proposition, plaintiff cites the following cases: *Hufnagel, supra; Tennessee Gas, supra; Bulen v. Hall–Houston Oil Co.,* 953 F.Supp. 141, 144–45 (E.D.La.1997); *Courts v. Accu–Coat Services, Inc.,* 948 F.Supp. 592, 595 (W.D.La. 1996); and *Fogleman v. Tidewater Barges, Inc.,* 747 F.Supp. 348, 355–56 (E.D.La. 1990).

 General maritime claims do not "arise under the Constitution, treaties, or laws of the United States" for purposes of original federal question jurisdiction under 28 U.S.C. § 1331. See *Tennessee Gas,* 87 F.3d at 153 and notes 5 and 6 (5th Cir. 1996). When an admiralty action is filed in state court it is not removable solely because it could have initially been filed in federal court. Nevertheless, removal of such an action is possible if federal jurisdiction is based on something other than admiralty, such as diversity or a federal question, i.e., a statutory provision. See *id.*

However plaintiff's argument confuses the issues of jurisdictional base versus applicable law. For example, this federal Court commonly has jurisdiction over state law matters. In those cases the *jurisdictional basis* of those state law claims is either federal diversity jurisdiction or federal supplemental jurisdiction, i.e., when state law claims are appended to federal claims. However, the law the Court applies to those state law claims is state law, it is not substantive federal law. When the Court examines whether removal of a claim was proper, it is examining the jurisdictional base, not the substantive law which might apply to the claim.

The root of the confusion is buried in the general maritime law and OCSLA where the issues of jurisdictional base and applicable law often coexist. See *Hufnagel,* 182 F.3d at 349; *Tennessee Gas,* 87 F.3d at 154; *Recar,* 853 F.2d at 369; and *Laredo*

*Offshore Constructors, Inc. v. Hunt Oil Co.*, 754 F.2d 1223, 1229 (1985). Plaintiff cites language employed in *Hufnagel, supra,* for the proposition that where admiralty and OCSLA *jurisdiction* overlap, the case is governed by *maritime law.* See *Hufnagel,* 182 F.3d at 350 (citing *Smith v. Penrod Drilling,* 960 F.2d 456 (5th Cir. 1992)). In Hufnagel, the plaintiff alleged he was a Jones Act seaman and that he was injured while working on a platform on the Outer Continental Shelf. The Fifth Circuit used the above-cited language in its careful analysis in this manner:

> However, OCSLA does not necessarily transform maritime claims falling within its *jurisdictional grant* into claims arising under federal law. Because OCSLA does not displace general maritime law, *substantive maritime law* continues to govern where both OCSLA and general maritime law could apply.

*Id.* at 350 (emphasis added). The Court goes on to conclude Hufnagel's claim did not fall under general maritime law. The same language can be found in cases arising out of an allision between a tugboat and a platform. See *Tennessee Gas, supra.* The language can also be found in cases involving a maritime contract and a tort occurring on an OCSLA situs. See *Smith, supra.*

The cited language when used in the noted cases is presented, however, with no explanation of how exactly an overlap of OCSLA and maritime jurisdiction occurs.

When one traces the *Hufnagel* language back to its origins, one ultimately reaches the beginning of the matter with *Laredo, supra.* In *Laredo,* there was a contract dispute involving the construction of a stationary offshore platform on the Outer Continental Shelf. In that case, the Fifth Circuit explained an *overlap* between OCSLA and general maritime law necessarily hinges on the language in OCSLA which provides,

> To the extent that they are applicable *and not inconsistent* with this subchapter or *with other Federal laws* ... the civil and criminal laws of each adjacent State ... are declared to be the law of the United States for that portion of the subsoil and seabed of the Outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the state if its boundaries were extended seaward ...

42 U.S.C. § 1333(a)(2)(A) (emphasis added). The court explained, "For federal law to oust adopted state law, federal law must first apply *independently of the location* of the platform or other device at sea." *Laredo,* 754 F.2d at 1230 (emphasis added).

For the purposes of oil and gas exploration of the OCS, admiralty jurisdiction will only be applicable "if the case has a sufficient maritime nexus wholly apart from the situs of the relevant structure in navigable waters." *Id.* An example of when this might occur is when the plaintiff is a seaman who alleges injury while on an OCSLA situs, i.e., a platform. In that situation the plaintiff's seaman status, alone, would be the sufficient and independent basis for maritime jurisdiction. It would be inconsistent with the Jones Act, i.e., the applicable federal law, to apply adjacent state law pursuant to OCSLA to the seaman's claims. Therefore, *maritime law would oust* the state law adopted by OCSLA in that scenario. See *Kimble v. Noble Drilling Corp.,* 416 F.2d 847 (5th Cir.1969), *cert. denied,* 397 U.S. 918, 90 S.Ct. 924, 25 L.Ed.2d 99 (1970) (emphasis added).

*Hufnagel,* in which the plaintiff, who was allegedly injured on an OCSLA situs, alleged he was a Jones Act seaman, cites *Smith, supra,* for the proposition that maritime law governs when maritime and

OCSLA overlap. See *Hufnagel*, 182 F.3d at 350.

*Smith*, in which the tort, involving a jack-up vessel positioned over a platform, occurred on an OCSLA situs, but the contract between the oil company and the platform owner was governed by maritime law, cites *Laredo* for the above proposition. See *Smith*, 960 F.2d at 459.

*Tennessee Gas*, which involved an allision between a tug and a platform, cites *Smith* and *Laredo* for the above proposition and also cites *Recar, supra*, in support of the Court's finding that, notwithstanding the maritime nature of the underlying claim, OCSLA conferred original jurisdiction over the matter. See *Tennessee Gas*, 87 F.3d at 150.

*Recar*, in which the plaintiff was allegedly injured while swinging on a rope from a platform to a vessel on the OCS, cites *Laredo, supra*, and concludes, "The district court may well have both admiralty *jurisdiction* under the general maritime law and federal question *jurisdiction* by virtue of OCSLA.... But we are not called upon at this time to decide *which body of law applies* to this case."*Recar*, 853 F.2d at 370 (emphasis added).

Finally, *Laredo* involved an alleged breach of a contract to construct a stationary platform on the OCS. In *Laredo*, the Fifth Circuit explained:

> [F]or federal law to oust adopted state law (under OCSLA), federal law must first apply independently of the location of the platform or other device at sea. Thus, in the context of oil and gas exploration on the Outer Continental Shelf, admiralty jurisdiction and maritime law will only apply if the case has a sufficient maritime nexus wholly apart from the situs of the relevant structure in navigable waters.

After examining the jurisprudence which provides the origin of the concept of an OCSLA and admiralty jurisdiction overlap, it is clear the case at bar is not such a situation. This Court finds admiralty jurisdiction and OCSLA in the case at bar do not overlap as contemplated by the cited cases. Rather, they could be said to coexist as to the separate claims. As to Walter, the platform owner, plaintiff's only theories of recovery come within the ambit of OCSLA. There is no claim under the general maritime law against Walter, because the incident as to Walter lacks the connexity with traditional maritime activity and situs required for the application of substantive maritime law. See *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982). The same is true as to plaintiff's claims against the crane operator and Roclan, the employer of the crane operator. The only defendant against whom plaintiff may have a claim under the general maritime law is the vessel owner/operator, M/V MISSISSIPPI. The claim under general maritime law against the vessel owner can co-exist with the claims against the platform owner. In the case at bar, OCSLA applies to the claims against certain of the defendants, and general maritime law applies to the claims against one of the defendants. As to none of the claims against any party could both OCSLA and general maritime law apply or "overlap."

As noted in *Tennessee Gas, supra*, an action based in admiralty, although not independently removable, is nevertheless subject to removal if federal jurisdiction is based on something other than admiralty such as diversity or a statutory provision. See *Tennessee Gas*, 87 F.3d at 153. In the case at bar, removal is based upon "something other than admiralty" jurisdiction, i.e., a statutory provision, OCSLA.

Consequently, this Court finds removal of the claims against the platform owner, Walter, the crane operator, Buck Fontenot, the employer of the crane operator,

Roclan, and the admiralty claim against the vessel owner, M/V MISSISSIPPI, was proper under 28 U.S.C. § 1441. In addition, there is nothing in 1441(c), nor in the jurisprudence concerning the overlap of OCSLA and admiralty jurisdiction that would provide for a remand of the general maritime action or the entire matter to state court. Accordingly, the Motion to Remand is DENIED.

### ORDER

Considering the foregoing Memorandum Ruling;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Motion to Remand [doc. # 17] is DENIED.