HIGGINBOTHAM, Circuit Judge,
dissenting:
I write separately because I find it clear that maritime law applies to Barker’s action against Hercules Offshore and Hall-Houston. As such, my analysis of both the motion to remand and the motion for summary judgment differs from that proposed by the majority.
I. CHOICE OF LAW
Judge Clement’s concurrence expresses doubt as to whether maritime law applies to Barker’s action, concluding that even though a jack-up rig is a vessel, “the general character of the incident appears to be non-maritime in nature.” Although Judge Clement does not “definitively determine” whether maritime law or Texas law applies to this lawsuit, because under either theory it contends removal was proper, I respond to the uncertainty her approach brings to settled law.
At the outset, we do agree on the basic premises surrounding the choice of law analysis, and those principles are well-established by this Circuit’s precedent: Even when the OCSLA’s choice of law provision applies, adjacent state law does not apply as surrogate federal law if maritime law applies of its own force.[1] And, in order for maritime law to apply of its own force, there must be both a maritime location and a connection to a traditional maritime activity.[2] Specifically, as explained by the Supreme Court in Jerome B. Gru- *226 bart, Inc. v. Great Lakes Dredge & Dock Co., the following test should be used to determine whether maritime law applies:
A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. The connection test raises two issues. A court, first, must “assess the general features of the type of incident involved” to determine whether the incident has “a potentially disruptive impact on maritime commerce.” Second, a court must determine whether “the general character” of the “activity giving rise to the incident” shows a “substantial relationship to traditional maritime activity.”[3]
I find that test satisfied in this case.
The location test is easily satisfied here because the alleged tort occurred on navigable water. My main departure from Judge Clement’s concurrence comes in its analysis of the second prong of the Gru-bart test — whether the claim has a connection with maritime activity.
Under the first prong of the connection inquiry, we ask whether the incident has “a potentially disruptive impact on maritime commerce.”[4] In answering that question, we look “to potential effects, not to the ‘particular facts of the incident’ ... focus[ing] not on the specific facts at hand but on whether the ‘general features’ of the incident were ‘likely to disrupt commercial activity.’ ”[5] Importantly, in conducting its analysis, the G'mbart Court looked to “the ‘general features’ of the incident at issue,” not at the activity being undertaken at the time of the accident.[6] Thus, although Barker and Broussard were running casing over a well, the relevant “incident” upon which the disruption analysis should be conducted is the fall of the pollution pan from the jack-up rig (a vessel). “So characterized, there is little question that this is the kind of incident that has a ‘potentially disruptive impact on maritime commerce.’ ”[7] As we explained in Coats v. Penrod Drilling Corp., a case involving an injury to a worker on a jack-up rig, “worker injuries ... can have a disruptive impact on maritime commerce by stalling or delaying the primary activity of a vessel.”[8]
I realize that Coats involved an injury sustained while repairing and maintaining a jack-up rig that was located in port, while this case involves an injury sustained while conducting casing operations on a jack-up rig with its legs extended into the seabed of the outer Cqntinental Shelf. But that distinction does not undermine our rationale for finding a potentially disruptive impact in Coats — that “worker injuries ... can have a disruptive impact on maritime commerce by stalling or delaying the primary activity on the vessel.”[9] That reasoning rests not on the particular task the worker is completing at the time of his injury but instead on the delay in vessel operations inherent in dealing with a worker’s injury or death. I find support for th.at reading in the Supreme Court’s articulation of the “potentially disruptive im *227 pact on maritime commerce” standard in Sisson v. Ruby}[10] That case involved a fire on a noncommercial vessel docked at a marina on a navigable waterway. The Supreme Court found that “such a fire has a potentially disruptive impact on maritime commerce, as it can spread to nearby commercial vessels or make the marina inaccessible to such vessels.”[11] After so finding, the Supreme Court clarified that the “potentially disruptive impact” inquiry does not “turn on the particular facts of the incident in this case, such as the source of the fire or the specific location of the yacht at the marina, that may have rendered the fire ... more or less likely to disrupt commercial activity.”[12]
Moreover, it is immaterial whether the accident in this case actually caused such a delay in maritime commerce. As the Supreme Court explained in Sisson, the inquiry focuses on whether the incident had a potentially disruptive impact on maritime commerce:
We determine the potential impact of a given type of incident by examining its general character. The jurisdictional inquiry does not turn on the actual effect on maritime commerce of the fire.... Rather, a court must assess the general features of the type of incident involved to determine whether such an incident is likely to disrupt commercial activity.[13]
Thus, I would find that the incident here had a “potentially disruptive impact on maritime commerce,” satisfying the first prong of Grubart’s connection inquiry.[14]
Turning to the second prong of the connection inquiry, we “must determine whether ‘the general character’ of the ‘activity giving rise to the incident’ shows a ‘substantial relationship to traditional maritime activity.’ ”[15] This inquiry turns on “whether a tortfeasor’s activity, commercial or uncommercial, on navigable waters is so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in the suit at hand.”[16] In his complaint, Barker alleges that the Defendants failed to provide a safe workplace aboard the Hercules 251 — a vessel. This Court has previously explained that “failing to provide a safe workplace aboard a vessel is a maritime tort,” even when the work the plaintiff is performing is non-maritime in nature.[17] Because vessel maintenance is a traditional maritime activity, I would find the tortfeasors’ activity bears a substantial relationship to a traditional maritime activity. That conclusion is only bolstered by the fact that this tort occurred aboard a vessel, and “[providing compensation for shipboard injuries is a traditional function of the admiralty laws.”[18]
*228 Because the Grubart test is clearly satisfied in this case, I would find that Barker has alleged a maritime tort. It is equally clear to me that Barker’s action against the vessel and the vessel-owner is cognizable under § 905(b) of the LHWCA. In § 905(b), Congress preserved the longshoremen’s right to recover against the vessel-owner for negligence.[19] Because the OCSLA, specifically 43 U.S.C. § 1333(b), makes the LHWCA applicable to Barker,[20] section 905(b) by its terms preserves his action against the vessel and vessel-owner.[21]
II. MOTION TO REMAND
At the time the action was removed to federal court, the federal removal statute provided in relevant part:
(a) Except as otherwise provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.
(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.[22]
Thus, for removal to be proper, § 1441(a) required that the federal district courts have original jurisdiction over the action. Then, for certain cases, § 1441(b) imposed the additional requirement that “none of the ... defendants is a citizen of the State in which [the] action [was] brought” (the “forum-defendant requirement”). I find removal proper here because Barker’s action is one “of which the district courts of the United States have original jurisdiction” by virtue of the OCSLA’s grant of original jurisdiction. Moreover, § 1441 (b)’s forum-defendant requirement is inapplicable because the case was not *229 removed on the basis of diversity jurisdiction.
A. Section 1441(a)
The Defendants removed this action to the Southern District of Texas based on the OCSLA’s grant of original jurisdiction. Specifically, 43 U.S.C. § 1349(b)(1) provides that “the district courts of the United States shall have jurisdiction of cases and controversies arising out of, or in connection with, ... any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf.”[23]
Although maritime law applies to Barker’s action, and federal courts do not have removal jurisdiction over maritime cases which are brought in state court,[24] this Circuit allows removal of a claim governed by maritime law if the claim falls within the OCSLA’s grant of original jurisdiction.[25] In those cases, the OCSLA provides an independent basis of jurisdiction to make otherwise non-removable maritime claims removable.
Here, it is undisputed that the federal district courts have original jurisdiction over this action based on § 1349(b)(1) because the case arises out of an operation conducted on the outer Continental Shelf which involves development of the minerals of the subsoil and seabed of the outer Continental Shelf.[26] Although the OCSLA does not define the term “operation,” this Court has explained that the term “refers to the doing of some physical act.”[27] 43 U.S.C. § 1331 defines “development” to mean “those activities which take place following discovery of minerals in paying quantities, including ... drilling ... for the purpose of ultimately producing the minerals discovered.”[28] The Hercules 251 was in the process of drilling on the outer Continental Shelf at the time of the accident, and Barker and Broussard were “preparing the rig’s drill floor substructure to run casing,” such that they were undertaking an operation involving development of minerals of the subsoil and seabed of the outer Continental Shelf. We have employed a but-for test to decide whether a dispute “arisfes] out of or in connection with” an operation, thus granting federal subject matter jurisdiction.[29] Because Barker would not have been injured but for the work he was performing on the Hercules 251, his action “aris[es] out of or in connection with” an operation on the outer Continental Shelf which involves development of minerals. Thus, his action is “a civil action ... of which the district courts of the United States have original jurisdiction” and was properly removed by the Defendants under § 1441(a).
B. Section 1441(b)
I interpret § 1441(b)’s forum-defendant requirement as only applying to cases re *230 moved on the basis of diversity jurisdiction. Because this case was removed on the basis of the OCSLA’s independent grant of federal jurisdiction, the forum-defendant requirement does not limit its removal.
As part of the Federal Courts Jurisdiction and Venue Clarification Act of 2011, Congress amended § 1441(b) to clarify that the forum-defendant requirement only applies to actions removed on the basis of diversity jurisdiction. The statute now explicitly states:' “A civil action otherwise removable on the basis of jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendant is a citizen of the State in which such action is brought.”[30] The House Report accompanying the amendment explains: “Proposed paragraph 1441(b)(2) restates the substance of the last sentence of current subsection 1441(b), which relates only to diversity.”[31] Based on that explanation, I view the amendment as a clarification that Congress, when it enacted § 1441(b), only intended the forum-defendant requirement to apply to cases in which removal was based on diversity; Congress did not intend the limitation to apply in other cases.[32]
Moreover, this interpretation of § 1441(b) as only applying the forum-defendant requirement to actions removed on the basis of diversity jurisdiction is consistent with the purpose of both the OCS-LA’s jurisdictional grant and the forum-defendant requirement. “Absent diversity ... it simply does not make any sense to make removal of a saving-clause case turn on whether one of the defendants is a citizen of the forum state. The fortuity of citizenship is totally irrelevant to the policy factors germane to the removal question under discussion.”[33] As this Court has previously explained, “[gjiven the national interests that prompted Congress to pass OCSLA and grant broad jurisdiction under 43 U.S.C. § 1349, Congress arguably intended to vest the federal courts with the power to hear any case involving the OCS, even on removal, without regard to citizenship.”[34]
In sum, I find removal proper here because the OCSLA provides an independent basis of federal jurisdiction to make otherwise non-removable maritime claims removable, and section 1441(b)’s forum-defendant requirement does not limit removal because the case was not removed on the basis of diversity jurisdiction.
III. MOTION FOR SUMMARY JUDGMENT
I disagree with the majority opinion’s conclusion that summary judgment was *231 proper under maritime law. To my eyes, a genuine issue of material fact exists as to whether Barker was in the zone of danger at the time of the accident, and as such I would reverse the district court’s grant of summary judgment in favor of the Defendants and remand for further proceedings on the merits.
To be clear, this Circuit has not yet decided whether a plaintiff may recover under maritime law for emotional injury claims based on the “zone of danger” theory. It is true, as the majority opinion explains, that “a bystander [cannot] recover for merely witnessing harm to another where the plaintiff suffered no harm or threat of harm.”[35] However, this Circuit has explicitly “[left] open[] the question [of] whether a plaintiff may recover for purely emotional injuries under a zone of danger theory.”[36] Based on the Supreme Court’s recent decision in Consolidated Rail Corp. v. Gottshall and other Circuits interpretations of that decision, I would hold that the zone of danger theory applies in maritime cases. In Gottshall, the Supreme Court held that a plaintiff who brings a Jones Act claim for emotional injury unaccompanied by a physical injury may recover under a zone of danger theory.[37] Barker urges that after Gottshall, claims for negligent infliction of emotional distress unaccompanied by physical injury are compensable under maritime law as long as the plaintiff was within the zone of danger. I agree. Although Gottshall did not explicitly hold that the zone of danger theory applies in non-Jones Act maritime cases for negligent infliction of emotional distress, at least two other Circuits have held that the Gottshall test, which allows plaintiffs “to recover for injuries — physical and emotional — caused by the negligent conduct of their employers that threatens them imminently with physical impact,”[38] applies in the maritime law context.[39] I would join them.
Under the zone of danger theory, summary judgment in favor of the Defendants was not proper. Contrary to the conclusion reached by the majority opinion, the evidence before the district court on summary judgment created a genuine issue of material fact as to whether Barker was threatened imminently with physical impact. Barker testified that he was standing a mere two feet from the hole when the pan fell, and that he feared he was going to fall into the hole himself. Looking at the accident, we must ask what a reasonable trier of fact might conclude. With that cast of sight, this was a man standing two feet from certain death with no protective harness, stunned at witnessing his friend cling to a beam then fall to his death. An involuntary reach out and he, too, would have died. This is the stuff of a live trial, not a paper review. He was at least arguably within the zone of dan *232 ger, and the final determination of that issue should have been left with the jury.
IV.
Today, Judge Clement brings uncertainty to the law applicable to accidents occurring on jack-up rigs. To these eyes her approach defies our precedent. Clarity of the metric in the law of the sea and its relations is especially prized as it is so much the law of insurance — define the rules and the underwriter can assess the risk and cost its distribution. I would hold that Barker has alleged a maritime tort and has created a genuine issue of material fact as to whether he was in the zone of danger at the time of the accident and reverse and remand.

. Union Tex. Petroleum Corp. v. PUT Eng’g, Inc., 895 F.2d 1043, 1047 (5th Cir.1990).

. Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995); Fore-most Ins. Co. v. Richardson, 457 U.S. 668, 673-74, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982); Hufnagel v. Omega Serv. Indus., Inc., 182 F.3d 340, 351 (5th Cir.1999).

. Grubart, 513 U.S. at 534, 115 S.Ct. 1043 (quoting Sisson v. Ruby, 497 U.S. 358, 363-65, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990)).

. Id. (quoting Sisson, 497 U.S. at 364 n. 2, 110 S.Ct. 2892).

. Id. at 538, 115 S.Ct. 1043 (quoting Sisson, 497 U.S. at 363, 110 S.Ct. 2892).

. Id. (quoting Sisson, 497 U.S. at 363, 110 S.Ct. 2892).

. Id. at 539, 115 S.Ct. 1043.

. 61 F.3d 1113, 1119 (5th Cir.1995) (en banc).

. Id.

. 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990).

. Id. at 362, 110 S.Ct. 2892.

. Id. at 363, 110 S.Ct. 2892.

. Id. (emphasis in original).

. Judge Clement's concurrence seems to rely on the fact that offshore drilling is not maritime commerce. However, it finds support for that proposition in statements dealing with offshore drilling from a fixed platform. That analysis does not rebut the argument that accidents on jack-up drilling rigs (vessels) have a potentially disruptive impact on maritime commerce even if the jack-up rig is engaged in offshore drilling at the time of the accident.

. Grubart, 513 U.S. at 534, 115 S.Ct, 1043 (quoting Sisson, 497 U.S. at 364-65, 110 S.Ct. 2892).

. Id. at 539-40, 115 S.Ct. 1043.

. Strong v. B.P. Exploration & Prod., Inc., 440 F.3d 665, 669 (5th Cir.2006).

. Coats, 61 F.3d at 1119 (citing Sisson, 497 U.S. at 368-75, 110 S.Ct. 2892 (Scalia, J., concurring) (arguing that all vessel-related *228 torts fall within the admiralty jurisdiction)); see Grubart, 513 U.S. at 542-43, 115 S.Ct. 1043 ("Grubart makes an additional claim that Sisson is being given too expansive a reading. If the activity at issue here is considered maritime related, it argues, then virtually 'every activity involving a vessel on navigable waters' would be 'a traditional maritime activity sufficient to invoke maritime jurisdiction.' But this is not fatal criticism. This Court has not proposed any radical alteration of the traditional criteria for invoking admiralty jurisdiction in tort cases, but has simply followed the lead of the lower federal courts in rejecting a location rule so rigid as to extend admiralty to a case involving an airplane, not a vessel, engaged in an activity far removed from anything traditionally maritime.... Although we agree with petitioners that these cases do not say that every tort involving a vessel on navigable waters falls within the scope of admiralty jurisdiction no matter what, they do show that ordinarily that will be so.").

. Scindia Steam Navigation Co., Ltd. v. De Los Santos, 451 U.S. 156, 165, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981).

. 43 U.S.C. § 1333(b); see Demette v. Falcon Drilling Co., 280 F.3d 492, 497-98 (5th Cir.2002), overruled on other grounds, Grand Isle Shipyard v. Seacor Marine, LLC, 589 F.3d 778 (5th Cir.2002) (en banc); Lormand v. Superior Oil Company, 845 F.2d 536, 541 (5th Cir.1987).

. See Lormand, 845 F.2d at 541; Longmire v. Sea Drilling Coip., 610 F.2d 1342, 1347-52 (5th Cir.1980).

. 28 U.S.C. § 1441(a), (b).

. 43 U.S.C. § 1349(b)(1).

. Romero v. Int’l Terminal Operating Co., 358 U.S. 354, 377-79, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959). Similarly, a § 905(b) action does not arise under a federal statute for purposes of federal question jurisdiction. Richendollar v. Diamond M, 819 F.2d 124 (5th Cir.1987).

. Morris v. T.E. Marine Corp., 344 F.3d 439, 444 (5th Cir.2003); Tennessee Gas Pipeline v. Horn. Cos. Ins., 87 F.3d 150, 153-55 (5th Cir.1996).

. Indeed the district court below found that the case calls within the OCSLA's jurisdictional grant, and the parties do not dispute that finding.

. Amoco Prod. Co. v. Sea Robin Pipeline Co., 844 F.2d 1202, 1207 (5th Cir.1988).

. 43 U.S.C. § 1331 (Z).

. See, e.g., Tenn. Gas Pipeline, 87 F.3d at 155; Recar v. CNG Producing Co., 853 F.2d 367, 369 (5th Cir.1988).

. 28 U.S.C. § 1441(b)(2).

. H.R.Rep. No. 112-10, at 12 (2011), 2011 U.S.C.C.A.N. 576, 580.

. I realize Congress provided that the amendment only applies to actions commenced on or after the expiration of the 30-day period beginning on the date of enactment (December 7, 2011). Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub.L. 112-63, § 105, 125 Stat. 758 (2011). Congress also explained that "an action or prosecution commenced in State court and removed to Federal court shall be deemed to commence the date the action or prosecution was commenced, within the meaning of State law, in State court.” Id. Because Barker filed his action in state court on January 27, 2010, the pre-amendment version of § 1441 applies. Despite the fact that the amendment to § 1441(b) does not apply retroactively, I believe that it illuminates a key aspect of congressional intent that is helpful in interpreting the applicability of § 1441(b)'s forum-defendant requirement.

. C. Wright, A. Miller, & E. Cooper, 14A Federal Practice & Procedure § 3674.

. Tenn. Gas, 87 F.3d at 156.

. Plaisance v. Texaco, 966 F.2d 166, 169 (5th Cir.1992) (en banc) (citing Gaston v. Flowers Transp., 866 F.2d 816 (5th Cir.1989)).

. Id.

. Consol. Rail Corp. v. Gottshall, 512 U.S. 532, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994). To be clear, although Gottshall involved claims under FELA, because the Jones Act incorporates FELA, decisions in FELA cases are applicable to cases brought under the Jones Act.

. Id. at 566, 114 S.Ct. 2396.

. See Chaparro v. Carnival Corp., 693 F.3d 1333, 1338 (11th Cir.2012) (per curiam) (explaining that "federal maritime law has adopted Gottshall’s application of the 'zone of danger’ test”); Stacy v. Rederiet Otto Daniel-sen, 609 F.3d 1033, 1035 (9th Cir.2010) (explaining in a maritime case that “[t]he federal standard for the negligent infliction of emotional distress is provided by Consolidated Rail Corp. v. Gottshall ”).