**Kirby Felix SOLET, Sr.**

v.

**CNG PRODUCING CO., Galaxie Marine Services, and Waveland Marine Services.**

**Civ. A. No. 94–1900.**

United States District Court, E.D. Louisiana.

April 25, 1995.

---

13. *Hansen,* 940 F.2d at 977.

14. *Hansen,* 940 F.2d at 978.

16. *Hansen,* 940 F.2d at 978.

Joshua Atwood Tilton, Charles Arlen Braud, II, the Tilton Law Firm, Mandeville, LA, and William Anthony Stark, and Grady C. Weeks, Weeks, Stark & Callahan, Houma, LA, for Kirby Felix Solet, Sr.

Philip E. Henderson, Henderson, Hanemann & Morris, Houma, LA, for the Gray Ins. Co. and Dynamic Industries, Inc.

Joshua Atwood Tilton and Charles Arlen Braud, II, the Tilton Law Firm, Mandeville, LA, for C Arlen Braud, II.

Scott Rodgers Wheaton, Jr., Lugenbuhl, Burke, Wheaton, Peck, Rankin & Hubbard, New Orleans, LA, for Galaxy Marine & Transportation Incorporated.

William Brett Mason, Woodley Williams Fenet, New Orleans, LA and Elton Ford Duncan, III, and Scott B. Kiefer, Duncan & Courington, New Orleans, LA, for CNG Producing Co.

Robert Perry McCleskey, Jr. and Laurie D. Clark, Phelps Dunbar, New Orleans, LA, for Waveland Marine Service Inc. and Galaxie Marine Service.

## ORDER AND REASONS

FELDMAN, District Judge.

Before the Court are defendants' motions to strike plaintiff's jury demand. For the reasons that follow, the motion of CNG Producing Company is DENIED, the joint motion of Galaxie Marine Services and Waveland Marine Services is GRANTED.

### I. Background

In their battle over whether or not this case should be tried before a jury, the parties have obliged the Court to navigate the familiar though turbid waters between OCSLA[1] and admiralty jurisdictions.

Kirby Felix Solet Sr. worked for Dynamic Industries as a contract welder on fixed offshore oil platforms owned and operated by CNG. He was allegedly injured during a personnel basket transfer between the platform and the M/V LOCKHART, a vessel owned by Galaxie and operated by Waveland.[2] Solet claims that CNG's crane operator set the basket down on the uneven surface between the gunnel and deck of the vessel, causing him to spill out. The plaintiff filed this negligence action against CNG, using OCSLA as the basis for federal jurisdiction. He later amended his complaint to include Galaxie and Waveland.[3]

In consolidated motions, defendants have moved to strike Solet's jury demand.[4] Solet as much as concedes that general maritime

---

1. Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 et seq.

2. Solet slept and ate on the platform where the accident occurred. Everyday he was transferred by a crane-lifted personnel basket to the M/V LOCKHART and transported to work at another platform some 35 minutes away.

3. Federal jurisdiction based upon diversity does not exist: Solet, Galaxie and Waveland are all Louisiana citizens.

4. Galaxy and Waveland have filed jointly, being identically placed (for the purposes of this motion) as the vessel parties.

law governs his suit against Galaxie and Waveland, but maintains that he is entitled to a jury trial against CNG. OCSLA affords Solet a trial by jury because it specifically adopts the law of the adjacent state (Louisiana) as surrogate federal law to the extent that it is not inconsistent with federal law. *See,* 43 U.S.C. § 1333(a)(2)(A). By contrast, general maritime law does not provide the right to a jury trial. *Fitzgerald v. United States Lines Co.,* 374 U.S. 16, 20, 83 S.Ct. 1646, 1650, 10 L.Ed.2d 720 (1963). Plaintiff urges the Court to join all three properly consolidated defendants in one jury trial. Galaxie and Waveland assert that either all claims must be tried in a non-jury trial or the case must be bifurcated.

### II. Law And Application

■ Plaintiff claims that the facts of this case are similar to those in other suits in which OCSLA jurisdiction was found to be proper. *See e.g., Recar v. CNG Producing Co.,* 853 F.2d 367 (5 Cir.1988) (holding that plaintiff injured during swing rope transfer from platform to vessel is within the broad reach of OCSLA); *Broussard v. John Graham & Sons,* 798 F.Supp. 370 (M.D.La.1992). CNG counters that general maritime law is applicable and is controlling. The Court agrees with CNG that where admiralty and OCSLA jurisdiction overlap, maritime law governs the case. *Laredo Offshore Constructors, Inc. v. Hunt Oil Co.,* 754 F.2d 1223, 1229 (5 Cir.1985). The pivotal inquiry, then, is whether general maritime law controls the case against CNG.

### A.

■ Beginning with *Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), and surfacing most recently in *Grubart v. Great Lakes Dredge & Dock Co.,* —— U.S. ——, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995), this jurisdictional question has come before the Supreme Court many times. Over time, that Court has fashioned a clear test to determine whether federal admiralty jurisdiction governs certain gray-area events. The Court has long required that two elements be present: (1) maritime situs of the accident,

("maritime location") and, (2) a connection to maritime activity ("maritime nexus"). *Grubart,* —— U.S. at ——, 115 S.Ct. at 1048 (discussing to *Executive Jet* ). This year, the *Grubart* court refined the maritime nexus test, holding that it implicates two issues:

> A court, first, must assess the general features of the type of incident involved to determine whether the incident has a potentially disruptive impact on maritime commerce. Second, a court must determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity.

*Grubart,* —— U.S. at ——, 115 S.Ct. at 1048 (citations omitted).

### 1. Maritime Location

■ Contrary to Solet's assertion that the location of the alleged tortfeasor or negligence is determinative, maritime location is tied to the place where the negligence took effect (the site of the injury). *West v. Chevron U.S.A. Inc.,* 615 F.Supp. 377 (E.D.La. 1985). *See also, Taylor v. Kennedy Engine, Inc.* 861 F.2d 127 (5 Cir.1988). Here, Solet asserts that he was injured when CNG's negligence caused him to fall out of the personnel basket and onto the deck of the M/V LOCKHART. Because there is no dispute that the vessel was engaged in maritime commerce and that it was located in navigable waters at the time of the incident, the Court concludes that this case satisfies the maritime locality test.

### 2. Maritime Nexus

■ The Supreme Court has specified that the court must define the relevant activity by the general features from which the incident arose. *Sisson v. Ruby,* 497 U.S. 358, 364, 110 S.Ct. 2892, 2897, 111 L.Ed.2d 292 (1990). The *Sisson* court focused upon the storage and maintenance of vessels at a marina on navigable waters, not the particular fact that the case involved pleasure craft rather than commercial vessels. *Sisson,* 497 U.S. at 364–65, 110 S.Ct. at 2897. Similarly, in *Executive Jet,* the relevant activity was identified as air travel in general, not one plane sinking in Lake Erie. Solet and CNG have both at-

tempted to characterize the event in their favor. Plaintiff contends that this accident involved oil platform workers being transported; that only by chance did Solet fall onto a vessel. CNG, meanwhile, maintains that the relevant activity in this case was the transfer of personnel to vessels in navigation; that it is of no moment how Solet was boarding. The Court inclines towards plaintiff's position. Solet was a pipe fitter hired to work on an oil platform. The general features defining the relevant activity are those central to the use of a crane to move personnel and materials on an oil platform.

### B.

The circumstances of Solet's injury do not satisfy the maritime nexus test as set forth in *Grubart.* Though conceivable, it is difficult to envision any potential effects to maritime commerce, and certainly no more than would arise from any crane activity near navigable water. The facts of this case contrast sharply with those in cases in which the Supreme Court found that although the particular accidents did not endanger maritime commerce, the more general relevant activity did. *See Sisson,* 497 U.S. at 370–71, 110 S.Ct. at 2900 (fire involving pleasure craft at pier implicated hazards to docking and storage of vessels generally); *Foremost Ins. Co. v. Richardson,* 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982) (collision between pleasure craft in isolated area involved dangers of collision to congested commercial shipping lanes).

Even if this activity affected maritime commerce, it bears little or no relation to traditional maritime operations. This accident recalls the Court's finding in *West,* a case arising out of nearly identical facts: "nothing about [plaintiff's] injuries or the accident itself except the fortuity of its culmination on the deck of a vessel exudes maritime flavor." *West,* 615 F.Supp. at 381. Nothing persuades the Court that the present case merits a different conclusion. Although there are maritime claims asserted by the plaintiff, CNG cannot piggyback its desire to proceed under admiralty law on top of the serendipitous circumstance that vessel operators are also being sued: There is no

evidence of any shared duties, liabilities or operations which would warrant treating CNG together with the Galaxie and Waveland. Moreover, being transported in a basket lifted by a crane mounted on an oil platform does not implicate the national interest in uniformity of law and remedies for those facing the perils of maritime transportation. *See West* 615 F.Supp. at 381.

The claim against CNG revolves around construction operations and oil platform work; it is properly governed by OCSLA. The Court concludes that CNG cannot avail itself of general maritime law in an effort to strike plaintiff's jury demand. Accordingly, CNG's motion to strike is DENIED, the joint motion of Galaxie and Waveland is GRANTED. Trial of this matter will take place before a jury. As to Galaxie and Waveland, the Court will employ the jury in its advisory capacity. *See* Fed.R.Civ.P. 39(c).