Gerald Jean–Claude
**DEBELLEFEUILLE Plaintiff,**

v.

**VASTAR OFFSHORE, INC.,
et al. Defendants.**

No. CIV. A. G–00–614.

United States District Court,
S.D. Texas,
Galveston Division.

April 20, 2001.

Matthew D. Shaffer, Schechter McElwee et al., Houston, for Gerald Jean–Claude Debellefeuille, plaintiffs.

James B. Galbraith, McLeod Alexander Powel & Apffel, Galveston, Steven Lynn Roberts, Fulbright & Jaworski, Houston, for Vastar Offshore Inc., Gilbert Cheramie Boats Incorporated, Grand Isle Shipyard Incorporated, defendants.

## ORDER GRANTING DEFENDANT GRAND ISLE SHIPYARD'S MOTION TO TRANSFER CLAIMS TO THE JURY DOCKET

KENT, District Judge.

Plaintiff brings this personal injury action pursuant to the Longshore and Harbor Workers Compensation Act ("LHWCA"), 33 U.S.C. § 905(b), the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. §§ 1333, and under the general maritime law. Now before the Court is Defendant Grand Isle Shipyard's Motion to Transfer Claims Against Grand Isle to the Jury Docket. For the reasons stated below, Defendant's Motion is **GRANTED**.

## I. BACKGROUND

Plaintiff alleges that he suffered personal injuries while working offshore of Louisiana. Although Plaintiff's Complaint is not entirely clear, it appears that Plaintiff worked aboard a fixed production platform in the Gulf of Mexico as a "products process operator." As is common in the offshore energy industry, Plaintiff did not remain on the platform at all times, but instead periodically transferred to and from the platform. As such, on January 3, 2000, Plaintiff was aboard the crew boat M/V RON PAUL and preparing to be transferred, by personnel basket, to the platform. Plaintiff alleges in his Complaint that he was injured during the ensuing transfer, when his basket struck a different metal basket; this second basket was aboard the M/V RON PAUL. According to Plaintiff, three separate Defendants are liable for negligently causing his injury: (1) Vastar Offshore, Inc., the platform owner; (2) Gilbert Cheramie Boats, Inc. ("Gilbert Cheramie"), the owner of the M/V RON PAUL; and (3) Grand Isle Shipyard, Inc. ("Grand Isle"), which owned the crane that was used in the offending basket transfer.

## II. DISCUSSION

### A. OSCLA

■ The Outer Continental Shelf Lands Act establishes a body of law that applies to the seabed, subsoil and fixed structures on the outer Continental Shelf. *See* 43 U.S.C. § 1333(a)(1); *Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 355, 89 S.Ct. 1835, 1837, 23 L.Ed.2d 360 (1969); *Tennessee Gas Pipeline v. Houston Cas. Ins. Co.*, 87 F.3d 150, 153 (5th Cir.1996). In order to determine whether OCSLA applies to an action for personal injuries, the Court asks whether the plaintiff's injuries "arise[ ] out of the production of minerals on the Outer Continental Shelf." *Recar v. CNG Prod. Co.*, 853 F.2d 367, 369 (5th Cir.1988); *see also* 43 U.S.C. § 1349(b)(1). This analysis, involves a three-part test. First, the Court must ascertain whether an "operation," meaning the doing of some physical activity, exists upon the Outer Continental Shelf. 43 U.S.C. § 1349(b)(1)(A); *Tennessee Gas*, 87 F.3d

at 154. If yes, the Court must, second, examine whether the operation, "involves 'exploration, development, or production' of minerals." *Tennessee Gas*, 87 F.3d at 154–55 (quoting 43 U.S.C. § 1349(b)(1)). And finally, the Court utilizes a "but for" test of causation in order to determine whether the accident did indeed "arise out of, or in connection with" the exploration, development, or production operation on the Outer Continental Shelf. *See id.* Here, each question is answered with a firm yes. Plaintiff would not have been injured "but for" his role in the production of minerals on the Outer Continental Shelf. Plaintiff's claims, therefore, fall within the broad ambit of OCSLA. *See id.*

 However, "[w]hile OCSLA was intended to apply to the full range of disputes that might occur on the [Outer Continental Shelf], it was not intended to displace the general maritime law." *Id.* at 154. Accordingly, "where OCSLA and general maritime law both could apply, the case is to be governed by maritime law." *Id.; accord Hodgen v. Forest Oil Corp.*, 87 F.3d 1512, 1526 (5th Cir.1996) ("To the extent that the OCSLA does not govern because a controversy arises in a particular maritime setting and bears a nexus to traditional maritime functions, maritime law controls."); *Recar*, 853 F.2d at 369 (holding that OCSLA applied to a worker's suit against the platform owner but stating that if the district court on remand found an independent basis for admiralty jurisdiction it should apply maritime law). The Court, therefore, turns to the issue of whether the law of admiralty applies to this dispute.

**B. *Admiralty Jurisdiction***

 Plaintiff implicitly concedes that the Court would not independently have admiralty jurisdiction over Defendant Grand Isle, the crane owner, based upon Grand Isle's own conduct.[1] *See Solet v. CNG Prod. Co.*, 908 F.Supp. 375, 377–78 (E.D.La.1995) (rejecting admiralty jurisdiction over a platform defendant based upon its role in a basket transfer injury). However, according to Plaintiff, because he alleges a maritime cause of action against Defendant Gilbert Cheramie based upon the operational negligence of the M/V RON PAUL, admiralty jurisdiction also encompasses Defendant Grand Isle. In support of this position, Plaintiff quotes from the Supreme Court's *Grubart* opinion, in which the Court stated that admiralty jurisdiction is established "when at least one alleged tortfeasor was engaging in activity substantially related to traditional maritime activity and such activity is claimed to have been a proximate cause of the incident." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 541, 115 S.Ct. 1043, 1052, 130 L.Ed.2d 1024 (1995). Thus, reasons Plaintiff, be-

---

1. Admiralty jurisdiction may exist over injuries caused on navigable water by a land based instrumentality. *See Kamani v. Port of Houston Auth.*, 702 F.2d 612, 613 (5th Cir. 1983) (finding admiralty jurisdiction when a plaintiff was injured aboard a vessel while running to escape the jaws of a land-based crane); *Hails v. Atlantic Richfield Co.*, 595 F.Supp. 948, 951 (W.D.La.1984) (exercising admiralty jurisdiction over a platform defendant when a platform based crane struck a plaintiff who was aboard a nearby vessel). Also, admiralty jurisdiction will generally attach when an injury is caused on land by a vessel. *See* The Admiralty Extension Act, 46 U.S.C.App. § 740; *Gutierrez v. Waterman Steamship Corp.*, 373 U.S. 206, 210, 83 S.Ct. 1185, 1188, 10 L.Ed.2d 297 (1963). Plaintiff here occupied a precarious position touching upon both theories, in that Plaintiff was appended to the "land," by a crane cable, when the several Defendants committed their alleged negligent acts. As mentioned, however, because Plaintiff does not argue that Defendant Grand Isle committed its own maritime tort the Court does not address this turbid issue.

cause Gilbert Cheramie was engaged in maritime activity, and is alleged to have been a proximate cause of Plaintiff's injury, Defendant Grand Isle is *ipso facto* subject to admiralty jurisdiction and procedure.[2] As pointed out, however, by Justice O'Connor's concurrence in *Grubart,* this is an incorrect reading of the Court's opinion. *See id.* at 513 U.S. at 548, 115 S.Ct. at 1055 (O'Connor, J., concurring); *but see AGIP Petroleum Co., Inc. v. Gulf Island Fabrication, Inc.,* 920 F.Supp. 1330, 1339 (S.D.Tex.1996) (applying *Grubart*'s "proximate cause" rule to invoke admiralty jurisdiction over a platform defendant). Instead, the alleged maritime tort of Defendant Gilbert Cheramie simply establishes a basis from which the Court, in its discretion, could exercise supplemental jurisdiction over non-maritime parties. *See* 28 U.S.C. § 1367; *Grubart,* 513 U.S. at 548, 115 S.Ct. at 1055 (O'Connor, J., concurring); *cf. also Feigler v. Tidex, Inc.,* 826 F.2d 1435, 1439 (5th Cir.1987) (approving the use of supplemental jurisdiction in admiralty cases); *Joiner v. Diamond M Drilling Co.,* 677 F.2d 1035, 1039 (5th Cir. 1982) (holding that a claim against a third-party land-based tortfeasor could not be brought in admiralty, but could be brought under supplemental jurisdiction). This reflects the rule that when a plaintiff has sued multiple defendants, the jurisdictional inquiry must be undertaken discretely for each defendant. *See* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 1465, pp. 496–498 (2d ed.1990); *Grubart,* 513 U.S. at 548, 115 S.Ct. at 1055 (O'Connor, J., concurring); *Solet,* 908 F.Supp. at 378 ("Although there are maritime claims asserted by plaintiff, [the non-maritime defendant] cannot piggyback its desire to proceed under admiralty law on top of the serendipitous circumstance that vessel op-

erators are also being sued...."); *cf. also Marathon Pipe Line Co. v. Drilling Rig Rowan/Odessa,* 761 F.2d 229, 234–35 (5th Cir.1985) (determining separately, for each defendant, which body of law, state or maritime, applied to remedy a pipeline accident on the Outer Continental Shelf). The Court need not, however, exercise supplemental jurisdiction over the platform-based Defendants in this matter, because, as discussed above, an independent basis for federal jurisdiction exists in OCS-LA. *See Recar,* 853 F.2d at 369 (holding that OCSLA provides federal question jurisdiction).

## C. *The Real Issue*

■ Plaintiff's suit against Grand Isle is brought solely pursuant to OCSLA, a federal question basis of jurisdiction. OCS-LA allows Plaintiff to bring a negligence suit under Louisiana law. *See* 43 U.S.C. § 1333(a)(2)(A) (adopting the law of the adjacent state as surrogate federal law to the extent it is not inconsistent with federal law); *Solet,* 908 F.Supp. at 376–77. Such a suit is an action at law to which the Seventh Amendment applies. *See Solet,* 908 F.Supp. at 378 (upholding plaintiff's right to a jury against an OCSLA platform defendant); *Hails,* 595 F.Supp. at 951 ("The OSCLA count ... allows trial by jury."). Therefore, Grand Isle can demand, and Plaintiff seemingly cannot prevent a timely sought jury. However, Plaintiff has also asserted an admiralty claim versus Defendant Gilbert Cheramie. Generally, absent diversity of citizenship, Plaintiff's claim versus the vessel owner would be heard by the Court in a bench trial. *See Powell,* 644 F.2d at 1068. Thus, the Court must ascertain what trial format this "hybrid" action will take on.

---

**2.** The Court assumes, without deciding, for purposes of this Motion, that Plaintiff could

establish admiralty jurisdiction over Defendant Gilbert Cheramie.

■ It has long been held that the Constitution does not forbid jury trials in admiralty cases. *See, e.g., Fitzgerald v. United States Lines Co.,* 374 U.S. 16, 20, 83 S.Ct. 1646, 1650, 10 L.Ed.2d 720 (1963). The Federal Rules of Civil Procedure provide, moreover, that "[t]he right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States shall be preserved to the parties inviolate." Fed. R.Civ.P. 38(a). But in admiralty cases the rules of procedure "shall not be construed to create a right to trial by jury of the issues in an admiralty or maritime claim within the meaning or Rule 9(h)."[3] Fed. R.Civ.P. 38(e).

■ The Supreme Court, in its *Fitzgerald* opinion, held that a plaintiff who asserts both a Jones Act claim, which by statute permits a jury, and a related admiralty claim, for which a jury would not otherwise be available, is entitled to a jury on both claims. *See Fitzgerald,* 374 U.S. at 21, 83 S.Ct. at 1650. "Only one trier of fact should be used for the trial of what is essentially one lawsuit to settle one claim split conceptually into separate parts because of historical developments." *Id.* The Court reasoned that "submitting part of [the lawsuit] to a jury and part to a judge, unduly complicates and confuses a trial, creates difficulties in applying doctrines of res judicata and collateral estoppel, and can easily result in too much or too little recovery." *Fitzgerald,* 374 U.S. at 18–19, 83 S.Ct. at 1650

The Fifth Circuit, while agreeing with the Supreme Court's logic, has limited the *Fitzgerald* holding in diversity cases. *See Powell v. Offshore Navigation, Inc.,* 644 F.2d 1063, 1067–69 (5th Cir.1981). In *Powell* the Court was faced with a plaintiff whose jury demand versus two non-diverse maritime defendants had been stricken. *See id.* at 1065. In response, the plaintiff amended his complaint to add several diverse defendants who could have also been liable for the plaintiff's shipboard injuries. *See id.* The plaintiff then demanded a jury, asserting the savings-to-suitors clause, with respect to the diverse defendants. *See id.; see also* 28 U.S.C. § 1333. The district court denied a jury, held a bench trial and entered judgment in favor of all defendants. *See Powell,* 644 F.2d at 1071. Plaintiff thereafter appealed, arguing that the trial court erred in denying a jury for the diverse defendants. *See id.* at 1064.

Faced with this scenario, the Fifth Circuit recognized and considered three available options: (1) a bench trial for the purely maritime defendants along with a jury trial for the diverse defendants; (2) a jury trial could for the whole case; or (3) a bench trial for all. *See id.* at 1069–71.

The Fifth Circuit rejected the first option, splitting of factfinders, as "condemned" by the Supreme Court's *Fitzgerald* holding. *See Powell,* 644 F.2d at 1069 (recognizing that the *Fitzgerald* interest in having a single fact finder is no less relevant when multiple, intertwined defendants are sued). The Court thus focused upon whether a jury trial or bench trial should have ensued. In rejecting a jury

---

3. Often, a plaintiff has a claim that is cognizable in either admiralty or at law. In such cases, Fed.R.Civ.P. 9(h) sets forth the procedure by which a plaintiff may elect which course to steer. The Plaintiff in this action has asserted Rule 9(h) in his Complaint. In order for this provision to have relevance, however, Plaintiff's Complaint must be cognizable in *both* admiralty and on some other ground—typically diversity or federal question. *See* Fed.R.Civ.P. 9(h); *T.N.T. Marine Serv., Inc. v. Weaver Shipyards & Dry Docks, Inc.,* 702 F.2d 585, 587 (5th Cir.1983). Rule 9(h) is not a magical incantation by which a plaintiff can vanquish a joined non-maritime defendant's right to a jury that would exist if the plaintiff had sued the defendant in a separate proceeding.

trial for the case, the *Powell* court expressed concern that a plaintiff suing several non-diverse admiralty defendants could add one diverse defendant in order to bootstrap his way, through "minimal diversity," into an otherwise unavailable jury trial. *See id.* at 1069–71. According to the Fifth Circuit, this would be inconsistent with the complete diversity rule of *Strawbridge v. Curtiss. See id.* at 1070–71. Thus, a bench trial was properly held for the *Powell* plaintiff. *See id.*

The action now before the Court presents a similarly intertwined matter involving a single accident. Thus, one trier of fact would be best used in order to fairly apportion fault.[4] *See Fitzgerald,* 374 U.S. at 18–19, 83 S.Ct. at 1650; *Powell,* 644 F.2d at 1069. The Court cannot serve as that single factfinder without eviscerating the OCSLA Defendants' Seventh Amendment rights. *See Woosley v. Mike Hooks, Inc.,* 603 F.Supp. 1190, 1192 (W.D.La.1985) (rejecting maritime defendants' efforts to obtain a bench trial when a plaintiff had invoked his Jones Act right to a jury over one defendant). And the likelihood of inconsistent results, as well as the waste of judicial resources necessitated by proceeding with a partial non-jury trial when a jury sits before the bench, counsels the Court to neither sever these claims nor utilize an advisory jury. *See Powell,* 644 F.2d at 1063. Unlike the situation in *Powell,* the present action does not involve an end-run around the complete diversity requirement. The non-admiralty defendants in this matter are not joined on the basis of savings clause diversity, but are instead subject to federal question jurisdiction. Thus, the logic of *Fitzgerald* controls, and the *Powell* limitation does not foreclose a

jury. *See Woosley,* 603 F.Supp. at 1192–93 (holding that, when the causes of action are interrelated, plaintiffs who have asserted Jones Act claims versus one defendant, for which they have a right to a jury trial, may also obtain a jury for admiralty claims versus non-Jones Act defendants). A jury will be empaneled to hear this entire matter. *See Fitzgerald,* 374 U.S. at 21, 83 S.Ct. at 1650 ("Therefore, the jury, a time-honored institution in our jurisprudence, is the only tribunal competent . . . to try all the claims.").

### III. CONCLUSION

For the reasons set forth in more detail above, Defendant Grand Isle Shipyard's Motion to Transfer Claims to the Jury Docket is **GRANTED.** The factfinder for all claims advanced by Plaintiff shall be a jury. The Court is aware that at the recent Rule 16 Scheduling Conference, the Court represented that this Motion would likely be denied. After further careful examination, however, the Court has reconsidered its previously expressed skepticism of Grand Isle's Motion. This case is presently set for trial during the month of November, 2001. That setting, and all other deadlines issued by the Court, remains in full force and effect.

**IT IS SO ORDERED.**

---

4. The Court recognizes the authority that exists for the proposition that in those instances wherein a plaintiff's claims may be appropriately severed, a jury might be convened as to one defendant or claim and a bench trial held for others. *See Concordia Co., Inc. v. Panek,* 115 F.3d 67, 71 (1st Cir.1997) (collecting authorities). Additionally, some courts have employed the jury in an advisory capacity with respect to the maritime defendants. *See Solet,* 908 F.Supp. at 378.