Steven A. **THERIOT**, Plaintiff,

v.

**BP CORPORATION NORTH AMERICA INC. and Rogers Oil Tool Servs., Inc.,** Defendants.

No. Civ.A. G–01–634.

United States District Court, S.D. Texas, Galveston Division.

Aug. 10, 2002.

Jerry L. Hermann, Kopfler & Hermann, LLC, Huoma, LA, for Steven A. Theriot.

Peter uu Thompson, Thompson & Reilley, Houston, TX, for Pacific Employers Ins. Co.

James B. Galbraith, McLeod, Alexander, Powel & Apffel, Galveston, TX, for BP Corp. North America Inc.

Giorgio George Caflisch, Holloway & Rowley, PC, Houston, TX, Clinton J.

Echols, Nathan Montgomery Rymer, Smith Rymer, et al., Houston, TX, for Rogers Oil Tool Services, Inc.

### ORDER GRANTING DEFENDANT'S MOTION FOR JURY TRIAL AND APPLICATION OF TEXAS LAW

KENT, District Judge.

This is a personal injury lawsuit wherein Plaintiff Steven Theriot seeks damages for injuries he allegedly suffered while working for Halliburton Energy Services, Inc. on a jack-up drilling rig ("Ensco 93") off the coast of Texas. Theriot maintains that his injuries were caused by defective hydraulic tongs, which were supplied to him by Defendants BP Corporation North America, Inc. ("BP") and Rogers Oil Tool Services, Inc. ("Rogers Oil"). At the time of his alleged accident, Theriot was using the tongs to perform a "tool fishing" operation while suspended in a basket over the platform. During the operation, Plaintiff's hand caught in the tongs and was severely wounded. Now before the Court is Rogers Oil's Motion for Jury Trial and Application of Texas Law, filed July 9, 2002. After thoughtfully considering the Motion, Theriot's Response thereto, the relevant evidence and the applicable law, the Court concludes that Roger Oil's Motion for Jury Trial and Application of Texas Law is hereby **GRANTED.**

### I.

The instant Motion is not the first time that a Defendant in this matter has requested a trial by jury. On the contrary, both BP and Rogers Oil have been seeking a jury trial of Theriot's claims for quite some time. BP originally requested a jury trial in its Application and Demand for Jury Trial, filed concurrently with its Original Answer on November 16, 2001, and again in its Answer to Theriot's First Supplemental and Amended Complaint, filed May 7, 2002. Rogers Oil has also twice

demanded a trial by jury, in its Answer to Theriot's First Supplemental and Amended Complaint, filed March 4, 2002, and with the filing of the instant Motion. On December 16, 2001, the Parties filed a Joint Discovery Case Management Plan wherein they stated that "Plaintiff has designated this case as an admiralty and maritime claim to be tried before the [C]ourt. The [D]efendants have made jury demands which the [P]laintiff will move to have stricken." As of this time, Theriot has not yet moved to strike such demands.

Nevertheless, at a scheduling conference held on January 4, 2002, the Court placed this matter on the non-jury docket,[1] presumably because as of that date, it was still unclear whether Theriot's claims were governed by the general maritime law or by state law via the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. §§ 1331–1356. Since that time, however, substantial discovery has taken place and the Parties are now more acquainted with the relevant facts surrounding Theriot's alleged injury. Presently, the Parties agree that at the time in question (1) Theriot was not a seaman; and (2) Ensco 93 was jacked-up over the seabed. Rogers Oil and Theriot disagree, however, on the matter of Ensco 93's precise location. Rogers Oil maintains that Ensco 93 was situated on the Outer Continental Shelf ("OCS") outside of the Texas boundary line, while Theriot maintains that Ensco 93 was situated in Texas's territorial waters. In support of its position, Rogers Oil has submitted competent evidence (namely, BP's Occupational Injury Report) establishing that Ensco 93 was located squarely on the OCS on the date in question. Theriot, on the other hand, offers no evidence at all demonstrating that the rig was located in territorial waters. Accordingly, the Court accepts Rogers Oil contention that Ensco 93 was situated on the OCS on the date of Theriot's alleged injury as true.

## II.

OCSLA "provides comprehensive choice-of-law rules and federal regulation to a wide range of activity occurring beyond territorial waters of the states on the [OCS]." *Demette v. Falcon Drilling Co., Inc.,* 280 F.3d 492, 495 (5th Cir.2002). The Fifth Circuit applies a broad "but-for" test to determine whether a cause of action arises under OCSLA. *See Hufnagel v. Omega Serv. Indus., Inc.,* 182 F.3d 340, 350 (5th Cir.1999). If an individual's employment furthers mineral development on the OCS, and "but for" that employment the individual would not have been injured, OCSLA applies. *See id.* In this case, Theriot's alleged injuries arose out of an operation involving the production of minerals on the OCS, and but for his work on Ensco 93, his alleged injuries would not have occurred. Thus, the Court has federal jurisdiction via OCSLA over Theriot's claims.

Recognizing that the statutory federal law may in some areas be inadequate, OCSLA incorporates aspects of the laws of adjacent states, *see id.* at 349, and adopts such state laws as "surrogate federal law." *See* 43 U.S.C. § 1333(a)(2)(A); *Rodrigue v. Aetna Casualty Co.,* 395 U.S. 352, 357, 89 S.Ct. 1835, 1838, 23 L.Ed.2d 360 (1969) ("It is evident from this [legislative history] that federal law is 'exclusive' in its regulation of this area, and that state law is adopted only as surrogate federal law."). Taken together, §§ 1333(a)(1) and 1333(a)(2) of OCSLA provide for the incorporation of state law as surrogate federal

---

1. This matter was originally set for a non-jury trial on July 15, 2002. However, in light of the Agreed Motion to Continue filed by the Parties on June 13, 2002, the Court has vacated the original trial setting and will set a new trial date at a supplemental status conference to be held on September 20, 2002.

law when three conditions are met: (1) The controversy must arise on a situs covered by OCSLA (i.e., the subsoil, seabed, or artificial structure permanently or temporarily attached thereto); (2) Federal maritime law must not apply of its own force; (3) The applicable state law must not be inconsistent with federal law. *See Union Tex. Petroleum Corp. v. PLT Engineering*, 895 F.2d 1043, 1047 (5th Cir.1990) ("*PLT*"). Only the first two factors are in dispute in this case.

*OCSLA Situs*

■ Section 1333(a)(1) of OCSLA establishes the reach of OCSLA's statutory scheme and applies federal law within its scope. *See* 43 U.S.C. § 1333(a)(1). Specifically, § 1333(a)(1) states that the laws and jurisdiction of the United States extend:

> [T]o the subsoil and seabed of the [OCS] and to all artificial islands, and all installations and other devices permanently or temporarily attached to the seabed, which may be erected thereon for the purpose of exploring for, developing, or producing resources therefrom, or any such installation or other device (other than a ship or vessel) for the purpose of transporting such resources, to the same extent as if the [OCS] were an area of exclusive Federal jurisdiction located within a state.

43 U.S.C. § 1333(a)(1). In a recent case, the Fifth Circuit expressly held that a drilling rig that is jacked-up over the OCS qualifies as "a device temporarily attached to the seabed, which was erected on the OCS for the purpose of drilling for oil." *Demette*, 280 F.3d at 498. Thus, Ensco 93 (which was jacked-up on the date in question) qualifies as an OCSLA "situs" within the scope of § 1333(a)(1). *See id.* at 500.

*No Independent Application of Federal Maritime Law*

Under the second *PLT* requirement, state law cannot govern this action if fed-

eral maritime law applies to Theriot's claims by its own force, that is, if his claims fall within the Court's admiralty and maritime jurisdiction. In *Jerome B. Grubart, Inc. v. Great Lakes Dredge and Dock, Co.*, 513 U.S. 527, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995), the United States Supreme Court explained that "a party seeking to invoke admiralty jurisdiction ... over a tort claim must satisfy conditions both of location and of connection with maritime activity." *Id.* at 534, 115 S.Ct. at 1048. The Court went on to clarify these requirements, stating:

> A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. The connection test raises two issues. A court, first, must assess the general features of the type of accident involved, to determine whether the incident has a potentially disruptive impact on maritime commerce. Second, a court must determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity.

*Id.* (quotations and citations omitted).

■ The first requirement to invoke admiralty jurisdiction in a tort claim—that the incident must occur on navigable waters—is not satisfied here. As noted above, Theriot was allegedly injured on an off-shore fixed drilling platform; and accidents that occur on fixed drilling platforms do not occur on navigable waters, as a matter of law. *See, e.g., Rodrigue*, 395 U.S. at 359–61, 89 S.Ct. at 1839–40 (holding that drilling platforms are not within admiralty jurisdiction); *Hufnagel*, 182 F.3d at 351 (holding that an accident on a fixed platform did not occur on navigable waters); *Smith v. Penrod Drilling Corp.*,

960 F.2d 456, 459 (5th Cir.1992) ("Drilling platforms constitute 'artificial islands' under § 1333(a)(1)"). As explained by the Fifth Circuit: "Fixed drilling platforms do not exist for any purpose related to traditional maritime navigation or commerce. For this reason, the Court has compared fixed platforms to piers, jetties, bridges, and ramps running into the sea, which have not supported the application of maritime law." *Hufnagel,* 182 F.3d at 351–52 (citing *Rodrigue,* 395 U.S. at 359–61, 89 S.Ct. at 1839–40).

Further, Theriot's alleged accident was not caused by a vessel on navigable waters. Neither Theriot nor Ensco 93 nor any equipment involved was struck by a vessel. Theriot was injured by equipment on board the drilling rig, which is not a navigable vessel. Thus, the accident at issue here fails the location test. *See id.* Because both the location test and the nexus test (not one or the other) must be satisfied to invoke admiralty jurisdiction, the Court is free to conclude at this juncture that federal maritime law does apply by its own force to Theriot's claims. Thus, OCSLA's second requirement for the application of state law is satisfied. Therefore, because all three parts of the *PLT* test regarding the applicability of state law under OCSLA are met in this case, the Court is confident that the laws of Texas (the adjacent state) govern this controversy.

### III.

In a suit brought by a non-seaman that is governed by state law under OCSLA, the Seventh Amendment's right to a jury trial applies. *See Debellefeuille v. Vastar Offshore, Inc.,* 139 F.Supp.2d 821, 824, 826 (S.D.Tex.2001) (Kent, J.) ("OCSLA allows Plaintiff to bring a negligence suit under [state] law.... Such a suit is an action at law to which the Seventh Amendment applies."); *Solet v. CNG Producing Co.,* 908 F.Supp. 375, 378 (E.D.La.1995)

(upholding plaintiff's right to a jury trial against an OCSLA platform defendant); *Hails v. Atlantic Richfield Co.,* 595 F.Supp. 948, 951 (W.D.La.1984) ("The OCSLA count ... employs state law as surrogate federal law and, as such, allows a trial by jury."). This is such a case. Rogers Oil's request for a jury (which is wholeheartedly supported by BP, as evidenced by the pleadings) is therefore proper. Theriot cannot prevent a timely sought jury and, because both Rogers Oil and BP have made repeated requests for a jury trial throughout the course of this litigation, Roger Oil's request is not too late. Accordingly, Roger Oil's Motion for Jury Trial is hereby **GRANTED.** This matter is hereby removed from the Court's non-jury docket and placed on the Court's jury docket.

**IT IS SO ORDERED.**